Hazel I. DAVIS *v.* William H. DAVIS

CA 02-156 84 S.W.3d 447

Court of Appeals of Arkansas
Division IV
Opinion delivered September 25, 2002

[Petition for rehearing denied October 23, 2002.]

*J. W. Green, Jr.*, for appellant.

*Russell D. Berry*, for appellee.

JOSEPHINE LINKER HART, Judge. Hazel Davis has appealed from three aspects of a divorce decree that ended her forty-nine-year marriage. She contends that the trial judge should have awarded her a one-half interest in a farm to which appellee William Davis acquired title before the parties were married and that the judge awarded an insufficient amount of alimony. She also argues that the judge should have awarded an increased amount of child support for the parties' disabled adult daughter, for whom appellant provides full-time care. We affirm the child-support award and reverse and remand as to alimony and the division of the farm.

The parties married in 1952, when appellant was fifteen years old. Throughout the marriage, appellant did not work away from the home. The parties had four children during the marriage; one child died in infancy and another, Vicki, was born in 1956 with a serious mental handicap. Vicki mentally performs at the level of a

seven-year-old and requires full-time care; there is no dispute that her needs prevent appellant from working outside the home.

In 1951, about six months before the marriage, appellee purchased a 211-acre farm in Arkansas County for $21,500, and borrowed the entire purchase price. The first payment on this debt was made after the parties married. The debt was satisfied by income that appellee generated from farming. Both parties later signed applications for loans that were used to improve the farm. On the loan applications, the farm was listed as belonging to both of them. At the time of trial, their son farmed this property and paid rent to appellee. The parties' son-in-law, George Juhl, testified that the farm now has a value of between $1,500 and $2,000 per acre. Appellee's brother, Johnny Davis, testified that its value was between $1,800 and $2,000 an acre.

In addition to the 211-acre farm, the parties acquired a significant amount of other property, both real and personal, during the marriage. One item of personal property that was not litigated was appellee's acquisition of stock in a family farm corporation, Davis Farms, Inc. According to the parties' daughter, Cynthia Juhl, appellee inherited some of this stock and purchased the rest. Appellant presented evidence, and appellee admitted, that he had taken steps to transfer marital property, including his stock in Davis Farms, to their son before the divorce. Although appellee explained that he did so to enable his son to use the stock as collateral for a loan, he denied having any further interest in this stock. Cynthia stated that appellee had told her that he had loaned the stock, and had not given it, to her brother. Additionally, Johnny Davis testified that appellee had stated on more than one occasion before the divorce that he was "getting everything fixed" to protect his assets from appellant and Vicki.

On his affidavit of financial means, appellee listed his total monthly expenses as $1,370. Appellant listed her and Vicki's monthly expenses as $2,526.50. Appellant and Vicki each draw $441 in social security benefits, and Vicki receives $90 in Supplemental Security Income (SSI) benefits. Appellee receives social security benefits of approximately $930 per month. In addition to

his social security income, his affidavit reflected an annual income of $18,500 from the rental of the farm and $10,000 from machinery rental.

In the decree, the trial judge found that Vicki is in need of support and set appellee's child-support obligation at $180 per month, noting that this amount is in addition to the social security benefits that she receives. The judge awarded appellant alimony in the amount of $300 per month. The judge found that the farm is nonmarital property. However, he awarded appellant the right to occupy the house on this property because she is Vicki's primary caregiver. He ordered appellant to pay for the utilities and normal maintenance on the house, and made appellee responsible for major maintenance and repairs, taxes, and insurance on it.

The judge ordered the parties' marital property, both real and personal, to be divided equally. This property included two parcels of real estate in Jefferson County, life insurance policies, an IRA, stock certificates, several bank accounts, a 1994 Lincoln Town Car, farm equipment, a GMC truck, and four guns. The judge ordered the real property in Jefferson County to be sold and the proceeds divided equally.

*Arguments*

Appellant makes the following arguments on appeal: (1) the judge erred in failing to award her a one-half interest in the farm; (2) the judge set her alimony too low; (3) the judge set child support too low.

*The Property Division*

Appellee asserts that appellant cannot argue on appeal that she was entitled to an interest in the farm because she failed to make this argument at trial. We disagree. Appellant presented extensive testimony about the parties' residence on the farm throughout their long marriage and introduced as exhibits copies of the loan applications upon which she and appellee had listed the farm as a joint asset. Our review of the record reveals that, at

trial, it was clear that appellant was asserting an interest in the property. Appellant adequately preserved this issue for purposes of appeal.

■ ■ The burden was on appellee to establish that the farm was his separate nonmarital property. *Aldridge v. Aldridge*, 28 Ark. App. 175, 773 S.W.2d 103 (1989). The trial judge's findings as to the circumstances warranting a property division will not be reversed unless they are clearly erroneous. *Dennis v. Dennis*, 70 Ark. App. 13, 13 S.W.3d 909 (2000). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake was committed. *Parker v. Parker*, 75 Ark. App. 90, 55 S.W.3d 773 (2001). We are left with such a conviction in this case.

■ We believe that the trial judge clearly erred in finding that the farm is appellee's nonmarital property. It is true that Ark. Code Ann. §§ 9-12-315(b)(1), (5), and (7) (Repl. 2002) provide that all property acquired prior to the marriage, its increase in value, and its income are not marital property. *See Thomas v. Thomas*, 68 Ark. App. 196, 4 S.W.3d 517 (1999).[1] However, a spouse's earnings acquired subsequent to marriage are classified as marital property. *Box v. Box*, 312 Ark. 550, 851 S.W.2d 437 (1993). Appellee's earnings from farming were, therefore, undisputably marital property. When dividing the parties' marital and nonmarital property, the trial court should consider that marital property was used to pay a debt that one spouse incurred prior to the marriage. *Id.*; *Bagwell v. Bagwell*, 282 Ark. 403, 668 S.W.2d 949 (1984); *see also Williford v. Williford*, 280 Ark. 71, 655 S.W.2d 398 (1983). In this case, all of the debt was paid from income that appellee produced while farming. In *Layman v. Layman*, 292 Ark. 539, 731 S.W.2d 771 (1987), the supreme court held that marital property does not include passive appreciation of nonmarital property but that active appreciation of such property as a result of a

---

[1] We note, however, that the farm's income was marital property until the General Assembly amended Ark. Code Ann. § 9-12-315 in 1989. *See Wagoner v. Wagoner*, 294 Ark. 82, 740 S.W.2d 915 (1987).

spouse's contribution of substantial time, effort, or skill over an extended period of time should be classified as marital property.

 *Layman* clearly applies here. When the parties married, appellee owned nothing more than bare legal title to the farm; all of the equity was accumulated during the marriage. For over forty years, appellee devoted virtually all of his work efforts toward producing income from the farm, and through his labors, appellee satisfied the debt on the farm and increased its value. Additionally, appellant provided decades of services to the family in running the household and rearing the children. Until the mid-1970's, appellee had serious health problems that required appellant's care and attention. Appellant frequently had to take appellee to the doctor at night. Without a doubt, her efforts also contributed to the farm's appreciation in value. The court is required to consider the services of a homemaker in dividing the marital property. *See Keathley v. Keathley*, 76 Ark. App. 150, 61 S.W.3d 219 (2001); *see also* Ark. Code Ann. § 9-12-315(1)(A)(viii) (Repl. 2002).

 The trial court's award of the farm to appellee must, therefore, be reversed and remanded. Although the burden was on appellee to establish the value of the farm prior to the parties' marriage, *Aldridge v. Aldridge, supra*, he failed to present any such evidence. Accordingly, the farm should be treated as marital property in the entirety and divided equally between the parties.

### Alimony

Appellant argues that the total award of alimony and child support is insufficient to meet her and Vicki's monthly expenses of $2,526.50. These awards, however, should be considered separately.

 Alimony and property divisions are complementary devices that a chancellor employs to make the dissolution of a marriage as equitable as possible. *See Boyles v. Boyles*, 268 Ark. 120, 594 S.W.2d 17 (1980). A trial judge's decision whether to award alimony is a matter that lies within his sound discretion and

will not be reversed on appeal absent an abuse of that discretion. *Ellis v. Ellis*, 75 Ark. App. 173, 57 S.W.3d 220 (2001); *Mitchell v. Mitchell*, 61 Ark. App. 88, 964 S.W.2d 411 (1998); *Anderson v. Anderson*, 60 Ark. App. 221, 963 S.W.2d 604 (1998). The purpose of alimony is to rectify economic imbalance in the earning power and the standard of living of the parties to a divorce in light of the particular facts of each case. *Anderson v. Anderson, supra.* The primary factors that a court should consider in determining whether to award alimony are the financial need of one spouse and the other spouse's ability to pay. *Id.* The trial court should also consider the following secondary factors: (1) the financial circumstances of both parties; (2) the amount and nature of the income, both current and anticipated, of both parties; (3) the extent and nature of the resources and assets of each of the parties; and (4) the earning ability and capacity of both parties. *Id.* In *Mitchell v. Mitchell, supra,* this court explained that the amount of alimony should not be reduced to a mathematical formula and that the need for flexibility outweighs the need for relative certainty. However, the court should consider the total income, from whatever source, including social security payments, of both parties in making the determination. *See Cochran v. Cochran*, 7 Ark. App. 146, 644 S.W.2d 635 (1983).

▆ Our decision that appellant should receive a one-half interest in the farm substantially reduces appellee's assets; therefore, we find that the amount of alimony awarded should be reconsidered by the trial judge on remand.

*Child Support*

▆ ▆ The general rule is that, once a child reaches majority, the legal duty of the parents to support that child ceases. *Kimbrell v. Kimbrell*, 47 Ark. App. 56, 884 S.W.2d 268 (1994). An exception to this rule, however, exists when a child is mentally or physically disabled in any way at majority. *Id.* Arkansas Code Annotated § 9-12-312(a)(5)(B) (Repl. 2002) provides that the "court may also provide for the continuation of support for an individual with a disability which affects the ability of the individ-

ual to live independently from the custodial parent." The determination of whether continued support for an adult child is proper has to be made on the basis of the facts of each particular case. *Kimbrell v. Kimbrell, supra.* Under these circumstances, the amount of child support a trial court awards lies within the court's sound discretion, and this court will not disturb the court's award absent an abuse of discretion. *Id.*

Appellee receives social security and rental income. As a result of our opinion, his farm rental income will be reduced by one-half. Arkansas Code Annotated § 9-14-201(4)(A) (Supp. 2001) defines "income" as "any periodic form of payment due to an individual, regardless of the source, including wages, salaries, commissions, bonuses, workers' compensation, disability, payments pursuant to a pension or retirement program, and interest." The Arkansas Supreme Court expanded this definition in *In re: Administrative Order No. 10: Arkansas Child Support Guidelines* § II, 331 Ark. 581, 582 (1998) as follows: "Income means any form of payment, periodic or otherwise, due to an individual, regardless of source, including wages, salaries, commissions, bonuses, worker's compensation, disability, payments pursuant to a pension or retirement program, and interest . . . ." In section IIIc., the guidelines state: "For Social Security Disability recipients, the court should consider the amount of any separate awards made to the disability recipient's spouse and/or children on account of the payor's disability."[2]

▆▆ ▆▆ Appellee has not appealed from the award of child support and does not dispute that his social security benefits should be considered as income for the purpose of computing his obligation. *See Davie v. Office of Child Support Enforcement,* 349 Ark. 187, 76 S.W.3d 873 (2002); *Davis v. Office of Child Support*

---

[2] The Guidelines were amended on January 31, 2002, effective February 11, 2002, and now state in section IIIc.: "For Social Security Disability recipients, the court should consider the amount of any separate awards made to the disability recipient's spouse and children on account of the payor's disability. SSI benefits shall not be considered as income." *In re: Administrative Order Number 10 – Child Support Guidelines,* 347 Ark. 1064 (2002).

*Enforcement*, 341 Ark., 349, 20 S.W.3d 273 (2000). Even if appellee's social security benefits are included in his take-home pay for the purposes of calculating his child-support obligation, the amount awarded need not be increased. In *Cash v. Cash*, 234 Ark. 603, 353 S.W.2d 348 (1962), the supreme court stated that a parent should be credited with the full amount of social security payments made to the child. *See also Cantrell v. Cantrell*, 10 Ark. App. 357, 664 S.W.2d 493 (1984). Vicki receives $441 in monthly social security benefits, which is more than the amount of child support required by the chart. Therefore, we cannot say that the judge abused his discretion in setting monthly child support at $180.

Affirmed in part; reversed and remanded in part.

STROUD, C.J., and ROBBINS, J., agree.